IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDWARD E. McCORCKLE,<br>   Petitioner,<br>V.<br><br>JAMES V. PEGUESE, et al.<br>   Respondents. | *<br><br>*  CIVIL ACTION NO. RDB-04-1805<br><br>*<br>****** |

## MEMORANDUM OPINION

On June 8, 2004, the Clerk received for filing Edward E. McCorkle's ("Petitioner") counseled 28 U.S.C. § 2254 attack on his 1998 convictions in Baltimore County Circuit Court for first degree murder and use of a handgun in the commission of a felony. (Paper No. 1). Respondents have filed an Answer to the Petition and Petitioner has filed a Reply. (Paper Nos. 9 and 14). After consideration of the pleadings and exhibits, the Court sees no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(d) & (e)(2). For reasons to follow, the Petition is hereby denied and dismissed with prejudice.

### I. Procedural History

On December 29, 1997, Petitioner was indicted on charges of first degree murder and related offenses. (Paper No. 9, Ex. 1). The facts adduced at trial are as follows:

> At the trial in this matter, Cynthia McKinney testified that she and [Petitioner] had a romantic relationship spanning over fifteen years. In October 1994, Ms. McKinney became friends with the victim, Kevin Reynolds, and by December 1996, she and the victim were romantically involved. On May 13, 1997, according to Ms. McKinney, [Petitioner] stabbed the victim. As a result of that incident, a trial was scheduled for December 2, 1997, for which Ms. McKinney had been summonsed to testify. Prior to that trial date, however the victim was murdered.
>
> Ricky Kemper also testified for the State. Mr. Kemper was an inmate at the Baltimore County Detention Center at the same time that [Petitioner] was an inmate. Mr. Kemper testified that he and [Petitioner] discussed the stabbing incident, and he

provided details as related to him by [Petitioner].  Mr. Kemper further testified that [Petitioner] told him that he had to kill the victim "to keep from going to jail for 50 years."  Additionally, Mr. Kemper testified that [Petitioner] gave him specific details relating to [Petitioner's] murder of the victim.

***

[Petitioner] testified on his own behalf, and he also called three cell mates. One of the cell mates, Derrick Thompson, testified that [Petitioner] had received a large packet of papers from his attorney and that he read them and made notes on a legal pad daily for most of the time that he was in the detention center.  In March 1998, the legal pad was missing, and Mr. Thompson concluded that Mr. Kemper had stolen the legal pad.

Another inmate at the Baltimore County Detention Center, David Hernandez, testified that he observed Mr Kemper enter [Petitioner's] cell, and leave with a writing pad and other papers. [Petitioner] testified that, in approximately April 1998, he noticed that his legal pad and many of his charging documents and courts documents were missing.

(Paper No. 1, Ex. B at pp. 1-3).

The case proceeded for trial before Circuit Court Judge John F. Fader II in December, 1998. On December 15, 1998, the jury found Petitioner guilty of first degree murder and use of a handgun in the commission of a felony. (Paper No. 9, Ex. 7 at pp. 212-15).  Judge Fader sentenced Petitioner to a term of life without the possibility of parole and a consecutive term of twenty years.  (*Id*., Ex. 8 at p. 31).

On appeal to the Court of Special Appeals of Maryland, Petitioner contended that the trial court abused its discretion in responding to a question from the jury.  (*Id*., Exs. 9 & 10).  In an unreported opinion filed on July 17, 2000, the Court of Special Appeals of Maryland affirmed Petitioner's convictions.  (Paper No. 1, Ex. B).  A petition for writ of certiorari, raising the same contention of error,  was filed and subsequently denied by the Court of Appeals of Maryland on November 13, 2000. (*Id*., Ex. C).

On November 2, 2001, Petitioner filed for post-conviction review in the Circuit Court for Baltimore County. (*Id*., Ex. D). Petitioner subsequently amended the Petition, (*Id*., Ex. D), raising the following Sixth Amendment ineffective assistance of counsel claims:

1. Trial counsel failed to object to the admissibility of an eyewitness identification when the identification was originally made by the witness while the witness was watching television and saw Petitioner McCorkle in handcuffs, being arrested by the police for the exact crime for which Petitioner McCorkle was on trial for in this case, such an unduly suggestive and unreliable identification prejudiced Petitioner McCorkle because this was the only witness who allegedly saw Petitioner McCorkle in the vicinity of the crime immediately after it occurred.

2. Trial counsel failed to file a Motion in Limine to keep out "other crimes" evidence for an attempted murder that Petitioner McCorkle was charged with, which allegedly was committed against the same victim as the victim who was murdered in this case, and which irreparably prejudiced Petitioner McCorkle in allowing the jury to consider evidence that the Defendant was a "bad person" was more likely to commit this crime against the same victim again, and therefore should be convicted of the charges for which he was on trial in this case.

3. Trial counsel failed to file a Motion for Modification or Reduction of Sentence and failed to file a Motion for Review of Sentence by a three judge panel which irreparably prejudiced Petitioner McCorkle because Petitioner McCorkle lost his right to petition ... to reduce, modify, or revise his sentence while [the trial court] still had revisory power over Petitioner McCorkle's sentence.

4. Even if none of the other multiple serious attorney errors committed by trial counsel are sufficient, individually, to provide post conviction relief, the cumulative effect of the serious attorney errors of trial counsel and/or appellate counsel entitle Petitioner McCorkel to post conviction relief.

(Paper No. 1, Ex. E).

On September 23, 2002, a post-conviction hearing was held before Baltimore County Circuit Court Judge Robert N. Dugan. (Paper No. 9, Ex. 13). Judge Dugan granted Petitioner leave to file a belated application for review of sentence by a three judge panel and a belated motion for modification/reconsideration of sentence. (Paper No. 1, Ex. H). The petition was denied in all other respects.

Petitioner filed an application for leave to appeal in the Court of Special Appeals, alleging that trial counsel rendered ineffective assistance by failing to object to the introduction of the "other

crimes" evidence. (Paper No. 1, Exs. I-K). On March 9, 2004, the Court of Special Appeals summarily denied the application for leave to appeal. (*Id.*, Ex. L).

Petitioner filed this § 2254 Petition in June of 2004, alleging that his convictions should be overturned based upon the ineffective assistance of trial counsel. Petitioner claims that:

> Mr. McCorkle's murder conviction resulted from "other crimes" evidence of an attempted murder against the same victim. Trial counsel committed serious attorney error when he failed to object to the admission of this evidence, incorrectly believing that motive evidence is always admissible, and failing to understand that step two of an "other crimes evidence" analysis is a hearing to determine whether, by clear and convincing evidence, the "other crime" was committed, and step three is to determine whether the probative value substantially outweighs the prejudicial value. Mr. McCorkle was prejudiced because there is a significant possibility that: (1) this damning "bad man" evidence contributed to his conviction, and (2) had his counsel objected, he would have prevailed at one of the three steps, thus excluding the "other crimes" evidence. The post conviction court erred by likewise misunderstanding and misapplying the three-step analysis required under Maryland law.

(Paper No 1).

## II. Threshold Considerations

### A. Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing all available remedies in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals. Petitioner no longer has direct appeal or post-conviction remedies available in connection with the claims raised before this Court. He has exhausted the claims presented here.

**B. Statute of Limitations**

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. §2244(d).

**C. Procedural Default**

There is no contention that Petitioner's claim has been procedurally defaulted.

### III.  Standard for § 2254 Review

Because this Petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001).  AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *See Bell v. Cone*, 535 U.S. 685, 693 (2002).  Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> 1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*).  In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the

Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

With these standards in mind, the Court will address the merits of Petitioner's claim.

**A.    Petitioner's Sixth Amendment Claims**

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id.* at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The ultimate focus of

the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688.  In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted).  A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable. *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Petitioner contends that trial counsel's failure to object to evidence concerning Petitioner's having been charged, prior to the crime in the instant case, with the attempted murder of the victim constituted ineffective assistance of counsel.  In his post-conviction decision, Judge Dugan found that even if it were error for trial counsel to fail to object to the "other crimes" evidence, the evidence was properly admissible under Maryland Rules of Evidence and accordingly, Petitioner

was unable to demonstrate that he had been prejudiced by trial counsel's conduct. (Paper No. 1, Ex. H).

Specifically, the post conviction court recited the correct standard to be applied:

> Under the Sixth Amendment to the Constitution an accused is entitled to the effective assistance of counsel in conducting a defense. *Strickland v. Washington*, 446 U.S. 668 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.
>
> The petitioner bears the burden to prove that he was deprived of effective representation. *State v. Calhoun*, 306 Md. 692, 729 (1986), *cert. denied*, 480 U.S. 910 (1987) and *Darden v. Wainwright*, 477 U.S. 168 (1986). In order to meet this burden, the petitioner must satisfy the two-prong test set forth in *Strickland*. That test requires the petitioner to show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. The Court of Appeals of Maryland adopted both the reasoning and the two prong test of *Strickland* in *Harris v. State*, 202 Md. 665, 696 (1985).
>
> In order to establish the "deficiency" prong, the Supreme Court declared that petitioner bears the burden of: (1) identifying the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment; (2) showing that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment (i.e. that, considering all the circumstances, the presentation fell below an objective standard of reasonableness); and (3) overcoming the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Harris*, 303 Md. 665, 690 (1985).
>
> The second prong in the *Strickland* analysis, the "prejudice" component, requires that the petitioner show that the deficiency in counsel's performance prejudiced the defense. An error by counsel, even if professionally unreasonable, does not warrant setting aside a criminal conviction if the error had no effect on the judgment. *Harris* 303 Md. 665, 6912 (1985). Thus, "[i]t is not enough for the [petitioner] to show that the errors had *some conceivable effect* on the outcome of the proceeding, or that the errors *impaired* the presentation of the defense," *Id*., at 700. Rather, the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Strickland*, 446 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Harris*, 303 Md. 665, 694 (1985).

\*\*\*

8

At the trial in this matter, "other crimes" evidence was presented by the State. The Petitioner was charged with the attempted murder of Mr. Reynolds, the victim in this case. The charges stemmed from a previous altercation between the victim and Petitioner. The trial on the attempted murder charge was set to be heard on December 2, 1997, one day following the death of Mr. Reynolds. No trial was held and no conviction entered. Petitioner claims that trial counsel provided ineffective assistance of counsel by failing to file a motion in limine excluding the evidence of the attempted murder charge.

A review of the transcript indicates the following preliminary discussion took place before the jury was convened:

[Prosecutor] Mr. Bailey:...And, Judge Fader, there is one other crime with which the Defendant was charged at the time this offense that he is on trial for occurred that we are in agreement there will be testimony on. In fact, we have agreed to stipulate to some records that the defense intends to put in about it. That is, it relates to motive. The State is alleging that the Defendant had a motive to kill a witness against him that was scheduled for trial the very day after this offense was alleged to have occurred. That offense happened May 13th, 1997 and was a stabbing of the same victim. In other words, the man, Kevin Reynolds, who is the victim in this case, was stabbed or alleged to have been stabbed on May 13th by Mr. McCorkle. That case was pending. We intend to offer evidence–

The Court: That case was for what, attempted murder.

Mr. Bailey: For attempted murder.

The Court: Okay.

Mr. Bailey: That case was pending at the time this offense occurred. And it is the State's theory that one of the motivations on the Defendant's part to act in this way was to eliminate that witness. I know that the defense has evidence they wish to offer that rebuts that allegation. So with respect to that particular charge, there will be some testimony on that.

Ms. Bledsoe: In fact, there was a charge brought against the person that was stabbed, Kevin Reynolds, for the stabbing of Edward McCorkle.

Mr. Bailey: That's correct. In addition, there was a subsequent charge of robbery brought by Mr. McCorkle against the victim as well. I would expect that all three of those [would be] made mention of.

Ms. Bledsoe: Yes. We are in agreement with that.

(T. 12/08/98 pp. 13-14).
**Discussion:**

9

Maryland Rule 5-404 entitled "Character evidence not admissible to prove conduct; exceptions; other crimes," provides that,

"[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show actions in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identify or absence of mistake or accident." Md. Rule 5-404(b).

The Court of Appeals discusses the "MIMIC" rule at great length in *Wynn v. State*, 351 Md. 307 (1998).  The Court outlines a three-step analysis to determine whether the other crimes evidence should be admitted.  The trial court must first determine whether the evidence fits within one or more of the exceptions found in Rule 5-404(b), then the court must decide whether the accused's involvement in the other crimes is established by clear and convincing evidence, and finally the necessity for and probative value of the other crimes evidence is to be carefully weighed against any undue prejudice likely to result from its admission. *Id.*, 351 Md. At 317 (1998).

Petitioner is not challenging steps one or three of the analysis but he challenges whether the State would have been able to establish by clear and convincing evidence that Petitioner was guilty of the previous attempted murder charge.

This Court is satisfied that the attempted murder charge does fit within the Rule 5-404(b) exceptions as evidence of motive in the present case.  Additionally, based on the fact that Petitioner was charged with attempted murder for the stabbing of the same victim who was murdered in this case, the probative value of the evidence, as attempting to show motive, outweighs any undue prejudice likely to result from its admission.  As noted in *Wynn*, that determination is within the trial court's discretion, and upon review of the transcript, this Court finds such discretion well founded.

The only remaining issue to consider is whether Petitioner's involvement in the alleged attempted murder is established by clear and convincing evidence sufficient to support the admissibility of the other crimes exception.  The attempted murder charge stemmed from a May 13, 1997 altercation between Petitioner and Mr. Reynolds.  As the transcript indicates the mutual fray that ensued concluded when police officers and emergency personnel arrived at the scene and Petitioner was taken to the hospital for treatment. (T 12/15/98 pp. 69-79).  The transcript further indicated that charges were filed against both Petitioner and Mr. Reynolds. (*Id.*). There is a clear indication that Petitioner was involved in the mutual fray that resulted in the charges of attempted murder being filed against him.  The state offered the evidence of the pending attempted murder charge to argue that Petitioner had a motive to kill Mr. Reynolds, who was expected to testify at trial.  This Court

>   is satisfied by clear and convincing evidence that the Petitioner's involvement in the mutual fray that resulted in the charge of attempted murder would have sufficiently survived a determination of admissibility at trial.
>
>   Furthermore, assuming the evidence could have been properly excluded through a motion in limine, this Court will not second-guess the decision of trial counsel to allow the evidence to be admitted. At the post-conviction hearing, trial counsel indicated that he discussed the defense and trial strategy with Petitioner and co-counsel, and determined that the attempted murder charge might be admitted despite objection. The nature of the altercation presented a two-sided affair and it was decided that as part of their defense, trial counsel would introduce facts that would show Mr. Reynolds was the instigator in the altercation and that Mr. Reynolds was aggressive in nature. Trial counsel wanted to allow Petitioner to explain his side of the altercation. In order to do so, facts relating to the altercation between Petitioner and Mr. Reynolds were pertinent and trial counsel did not object to the evidence presented. Where counsel has a valid tactical reason for his actions, his actions do not constitute ineffective assistance of counsel. *State v. Matthews*, 58 Md. App. 243 (1984).
>
>   Therefore, Petitioner's...allegation of ineffective assistance of counsel fails for the above mentioned reasons. The evidence of the attempted murder charge would have been properly admitted under the *Wynn* analysis and facing this possibility, trial counsel allowed the evidence to be admitted without objection. The probative value outweighed the prejudice to the Petitioner and trial counsels' performance did not prejudice the defense. In addition, Petitioner has failed to establish that trial counsel's actions were not the result of sound trial strategy or that the result of the trial would have been different but for counsels' failure to file a motion in limine.

(Paper No. 1, Ex. H, pp. 2-4, 11-13).

Generally, evidence of prior bad acts committed by the defendant which is offered as evidence that the defendant committed another criminal act independent of the crime for which he is being tried, is not admissible at trial. *Ross v. State*, 276 Md. 664, 669-670 (1976). As with many rules of evidence, however, there are exceptions. If the criminal defendant's prior acts tend to establish motive, intent, common scheme or design, absence of mistake, or identity, the evidence is admissible. *See* Md. Rule 5-404(b).

As noted by the post conviction court, during Petitioner's criminal trial evidence was admitted that showed that Petitioner and Kevin Reynolds were involved in an altercation on May

13, 1997. The State's Attorney for Baltimore County charged Petition with attempted murder as a result of this altercation. Petitioner filed assault charges against Kevin Reynolds as a result of the May 13, 1997 incident which were later dismissed by the State's Attorney's Office. Evidence was introduced that Petitioner was scheduled to be tried for the May 13, 1997 altercation on December 2, 1997. Petitioner did not proceed to trial on that date, as Kevin Reynolds, the victim and principal witness to the May 13, 1997 altercation was murdered on December 1, 1997. Contrary to Petitioner's assertion before this Court, the evidence concerning the May 13, 1997 altercation and December 2, 1997 trial date were not introduced to show that Petitioner was a bad actor who acted in conformance with his bad character or that he in fact assaulted Kevin Reynolds on May 13, 1997. Rather, this evidence was admitted to demonstrate a motive for Petitioner killing Kevin Reynolds on December 1, 1997, i.e. to prevent Kevin Reynolds from testifying against Petitioner. The post conviction court found that this evidence was clearly admissible under Maryland law. As such, Petitioner was not denied the effective assistance of trial counsel because counsel failed to object to it. A failure to object to evidence that is in fact admissible is not error and, consequently, does not amount to ineffective assistance of counsel. To the extent that Petitioner contends that the post conviction court erred in its ruling as it pertains to Maryland law regarding the admission of evidence, it is not the role of this Court to second guess those conclusions.[1] *See Rose v. Hodges* 423 U.S. 19, 21–22 (1975). *See Estelle v. McGuire*, 503 U.S. 62, 67- 68 (1991) "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas

---

[1] Petitioner contends that under Maryland law, the State was required to prove by clear and convincing evidence that Petitioner was guilty of attempting to murder Petitioner on May 13, 1997. This Court disagrees. All that was required was that the State prove, by clear and convincing evidence, that Petitioner had been charged with the crime and was scheduled for trial on December 2, 1997. This the State did. (Paper No. 9, Ex. 3, pp. 153-172, 176-89).

review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*.

The post conviction court also found that trial counsels' failure to object to the admission of the evidence concerning the December 2, 1997 trial date and May 13, 1997 assault was sound trial strategy. Trial counsel testified that they wished to show the jury that Kevin Reynolds, the victim, was not the innocent he appeared to be, but rather that he had been the aggressor in the May 13, 1997 altercation with Plaintiff. Paper No. 9, Ex. 13. Absent clear and convincing evidence to the contrary, a claim that counsel's decision was premised on trial strategy cannot be disturbed. *See Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989). Having examined the post-conviction court's ruling as well as having independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, Petitioner has not demonstrated the prejudice necessary to establish his trial attorney's ineffectiveness. 28 U.S.C. § 2254(d). *See Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (challenge to counsel's trial decisions and/or tactics amounted to no more than "Monday morning quarter backing.").

### IV. Conclusion

In light of the foregoing, the Court sees no reason to overturn Judge Dugan's decision. His findings do not involve an unreasonable application of *Strickland* and more than satisfy the §2254(d) standard of review. Accordingly, this Petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice. A separate Order follows.

Date: August 22, 2005                    /s/
                                         RICHARD D. BENNETT
                                         UNITED STATES DISTRICT JUDGE